Thank you. Good morning. My name is Richard Cornell. I represent the appellant Denise Buchanan. I will talk about the certified issue. I would urge the Court, before deciding the case, to expand the COA and permit supplemental briefing on the first two issues, if the Court deems that necessary, and if I may make one brief comment about that. Besides the fact that I personally feel this is an incredibly gross miscarriage of justice, there is a fact that the Nevada Supreme Court, the Court below, and I really think even counsel have somewhat overlooked, and that is that my client is not serving one life sentence for the death of one child. She's serving two consecutive life sentences for the death of two. Kennedy Are they consecutive, not concurrent? Buchanan Pardon me? Kennedy Are they consecutive rather than concurrent? Buchanan They are consecutive, yes. Kennedy With possibility of parole? Buchanan Possibility of parole after ten years each, she's still on sentence one. Kennedy Okay. Now, the issue of criminality is the same in both counts. The evidence is different. Most of what you Buchanan You're arguing the issues that we're not certified for appeal now, right? Kennedy Yes. And what I'm doing is urging this Court to expand Buchanan I, at least this judge, would prefer that you focus on the issues that we have certified. We looked at those issues, made a determination not to certify those. If you can talk about whatever you want, but my recommendation to you, respectfully, is that you talk about the things that we have certified. Kennedy Very well. My point is the evidence with John is different than with Jacob. The focus of the courts and Drs. Roe and Ophoffen have been on Jacob. And respectfully, when you look at the evidence surrounding John, I submit to you there's precious little evidence, certainly no material evidence of death by a criminal agency with respect to John. Now, as to the certified issue, clearly the CASLA instruction was the one that was given. Clearly that instruction lowers the burden of proof for the State because it conflates premeditation and deliberation. Now, let's assume for a moment that you are correct that the CASLA instruction was incorrect. Okay? Kennedy Okay. Kennedy You're still faced with a harmless error analysis, are you not? Kennedy Correct. Kennedy Okay. So tell us why, given the mountain of circumstantial evidence that was presented in this case about this woman's killing of three infants, there isn't any evidence that the CASLA instruction was incorrect. How could the jury have possibly mistaken what it needed to find? Kennedy Okay. First, we begin with this. The Nevada Supreme Court and the court below used the wrong constitutional test to adjudicate harmless error. They both used sufficiency of the evidence. That hasn't been the standard since Kodiakos in 1946. And what the Nevada Supreme Court and the court below did was they focused on the length of time that it takes to suffocate or strangle another human being. Per the authorities that I gave you in the 28J letter, the mere fact of that does not by itself prove premeditation throughout the country. Kennedy You're basically choosing to argue science. Is that what you're saying? That you're disputing what happened with the apnea monitor alarm, what happened to the internal record of the monitor in terms of the irregularities?  Kennedy For purposes of this issue, no, because for purposes of this issue, we have to concede all of that, that all of that could lead a jury to conclude that there was a murder. And the question now is which of the three. Breyer Just one juror, right? Kennedy Pardon me? Breyer Just one juror. Kennedy Or just one juror. That's right. And as to that, we must look to the entire record to determine whether one juror or more would be in equipoise as to the harmlessness of the error. Let's look at the record. First off, and I'm sure my opponent will talk about the record in the light most favorable to the state. Let's talk about the record in the light most favorable to the defense. First off, my client did not confess. She was submitted to a rigorous grilling by two detectives, but she did not confess. So we don't know from there what was in her mind before smothering her babies to death. Secondly, no witness in this case. Breyer Are you conceding that she did smother them to death? Kennedy No, I'm not. Breyer Okay. Kennedy I'm conceding that on this record you cannot look to that to determine what was in her mind. Or I'm not conceding, I'm stating. Breyer Yeah. Kennedy Secondly, no witness claimed that she made any statement consistent with a design planned intent to kill either before or after the fact. So we have no admission. Breyer But the jury, not the jury. I don't want to dominate the discussion here. But couldn't the jury have found the fact that when relatives were sobbing and crying about the death of these infant children, that your client was completely passive, emotionless, indeed cold? Is that when the people showed up initially at the time of the funeral? Isn't that an indication that they can take into account? It's circumstantial evidence, I agree. But isn't all of that part of the cumulative evidence? Kennedy It may suggest premeditation, deliberation. It may not. It may suggest that a client who was just by that time in a complete state of shock. She'd just gone through the death of one child at least. Breyer We're talking three children, three baby boys allegedly murdered by suffocation by their mother over a period of time, over a period of years between them. And in each instance, she showed absolutely no emotion at the time the coroner showed up, at the time of the funeral. Isn't that an indication that a juror could take into account in terms of motive? Kennedy They could take it into account. The question this Court has is on the entire record, are we in equipoise on whether that evidence, as well as every other piece of evidence, establishes deliberation or premeditation beyond reasonable doubt? Roberts Here's where I am with this case on the Kaslan instruction and on the harmless error. I mean, there were three children killed or three children died, if I were to say it in a more neutral way. The jury found that two out of the three, the second and the third deaths, were murdered by your client. And the question here is whether or not it's harmless error that the jury was not given a premeditation instruction, that they had to find out. So the question in front of us is, if the jury had been properly instructed that it needed to find premeditation, would it have found that on this evidence? So we're basically having to guess what a properly instructed jury would have done. I find the evidence in favor of premeditation with respect to Jacob, the third child who died or was killed, very strong. That is to say, we know from the internal record on the monitor that that monitor was turned off sometime before 4 o'clock. And then there's a long lapse of time and so on. I mean, that one just screams out premeditation. The evidence of premeditation for John, the earlier, that is to say, the second child dead or the second child killed, in my mind is somewhat less strong. Can you help me understand, as best you can in your favor, why the evidence of harmless error in John goes your way? Because, first off, we understand that an apnea monitor is not an iron lung or any other kind of life-saving device, correct? In John's case, the evidence was that my client turned off the monitor and the child died almost immediately, which would suggest that the child was in the dying process. When you say the evidence, that's her testimony? That was what she told her husband, who was sleeping in the room when John died. What that would suggest is that the child was in the dying process when she turned off the apnea monitor. That is to say, with respect to John, that's different than Jacob, as you have just articulated. But, again, look at the entire record. Even the state's doctors admitted that in isolation, each one of these deaths is a SIDS death. Wouldn't that fact, I mean, that's the best case. Wouldn't that fact put you in equipoise? But didn't Dr. Opoven testify that there was no evidence of underlying disease in any of the children, that there was evidence of physical neglect, emotional neglect, emotional abuse, and physical abuse, and that none of the deaths were consistent with SIDS or any other known disorder? Severely conflicting evidence on that point from the experts, yes, I do believe Dr. Opoven testified. But we also know that the children had, the younger two children, John and Jacob, had hypoplasic kidneys. We know that Jeremiah, the one who was acquitted, was dehydrated, all of which would suggest some type of metabolic problem going on with each and every one of these children. Didn't, I forget which witness, testify that the chances of, oh, this is McCarty, the coroner, said that the chances of one SIDS death is one in 1,000 live births, that a second SIDS death within the same family posed a statistical impossibility. Didn't even get to the third one. Yes, he did. That shows. He did, and his opinion assumes there's no genetic or metabolic link. But I want to focus on what I think the Kaysland error is. The question here is not whether she killed them. And that goes, the testimony as to the likelihood of a being SIDS death goes to whether she killed them. The question in front of us is whether the jury properly instructed would have concluded that the killing was premeditated. In Nevada, a jury must, in its guilty verdict, if it's going to determine that it's murder, determine the degree. That's required under NRS 200.030. NRS 200.03 also specifically describes what first-degree murder is and then has a subsection, I think, three, that says all other murder is second-degree murder. So a properly instructed jury, given the Byford instruction, could say, we agree with the state's experts. By the way, I don't want to concede this, but, you know, a jury hypothetically could think, on this entire record, we're going to agree with the state's experts. We're going to agree the circumstances are such that she committed murder, but we cannot find premeditation deliberation beyond a reasonable doubt. If the evidence is sufficient, then, yes, most certainly, they could. And that's the case on the question. Yes. So for these reasons, as well as the fact that the father's mother's mother had ten siblings who died at about the same age as Jeremiah, John, and Jacob, which certainly, to me, suggests a genetic problem, contrary to the statistical testimony of Coroner McCarty, I conclude that a reasonable jury would be an equipoise. This does have substantial injurious effect on the verdict. You can't conclude that the error was harmless beyond a reasonable doubt. Okay. Now, we've taken you over time. Let's hear from the State, but we will give you a chance to respond. Thank you very much. Good morning. Heather Proctor, Deputy Attorney General, with the State of Nevada, and I have the honor of representing the Respondents in this matter. First of all, because Biford was decided prior to the Petitioner's conviction becoming final, it does apply in this case. The Nevada Supreme Court did find that Biford did apply, did find that the premeditation deliberation instruction was erroneous, but that did not end the determination. So the question is harmless error. Correct, Your Honor. The Petitioner does not provide any argument that the instructions in this matter did create a substantial or injurious effect or influence on the jury's verdict. His focus is on the sufficiency of the evidence and on the method of the deaths of the children, on the reliability of the evidence. That's not the question. The question is whether there's an erroneous, there was a harmless error as the basis from these erroneous jury instructions. I don't understand what you just said. It seems to me that if we're trying to figure out whether there's a harmless error, we have to decide would the jury, if properly instructed, have found premeditation on this evidence. We've got to look at what the evidence is in order to decide that question. Yes, Your Honor. You have to look at the evidence based on the definitions of the Biford case on defining premeditation and deliberation. It is not sufficiency of the evidence to find her guilty overall. It's based on whether there is evidence to find premeditation and deliberation under those instructions. No. The question is not whether there is sufficiency. This is not a sufficiency of the evidence question. It is a harmless error question. But we do look at the evidence to determine that. Okay. I think we're on the same page. Well, isn't it one step further removed from that? We're really looking to see if this was an unreasonable application of clearly    We're going to argue that it was an unreasonable application of clearly established federal law. So we're not actually deciding whether it was harmless error, aren't we? That is the ultimate question, Your Honor, under EPA. And our response is that the United Supreme Court's decision was not contrary to or unreasonable application of clearly established federal law as determined by the United States Supreme Court. The focus of what I'm going to be arguing about is that the evidence that was presented regarding deliberation and premeditation was not contested by the petitioner in this case. The defense in this case was wholly that the three children, Jeremiah, John, and Jacob, all died of natural causes or SIDS. The defense specifically at Excerpt of Record 3391 chose not to request jury instruction on any lesser-included offenses such as second-degree murder or manslaughter. And therefore, the defense never presented any evidence that contradicted premeditation and deliberation. The jury was given two choices, to find that these children died of natural causes or SIDS or that these children were murdered by their mother. There's no evidence. The jury instruction in this case, therefore, cannot be harmless error because if the jury found that these children did not die of natural causes or SIDS, the only choice that they were given as a result of the defense's choice in the jury instructions was that these children died as a result of first-degree murder pursuant to premeditation and deliberation. Kennedy. I appreciate that part of the case. So the jury was, it's either conduct a first-degree murder or she walks. Correct, Your Honor. As to each child. Ms. Proctor, under Nevada law, if a lesser-included offense jury instruction is not given to the jury, is it still possible for the jury to find a lesser-included offense and find someone guilty then, or are they barred under Nevada law to follow the jury instructions in this case? It is my understanding, Your Honor, that they have to follow the jury instructions and the defense specifically did not request. They actually specifically said we don't want the lesser-included jury instructions. That's in the record? That's in the record. That's EOR3391. Say that again, please. EOR what? 3391. Thank you. And that was prior, that was after the jury instructions were settled in this matter, but immediately prior to the jury instructions being read to the court, to the jury, the court asked, once again, defense, do you want any lesser-included instructions? The defense specifically said no, we do not. And as a result, the jury instruction could not have been injurious to the jury's verdict because they didn't have the choice. Natural cause is first-degree murder. Well, that's not quite right. That is to say, if the jury instruction said in order to convict a first-degree murder, you must find deliberation. And if the jury doesn't find deliberation, she walks. Because they're not given the choice of second-degree murder. Your Honor, our argument is that if they find that she was not, those children died of any agency other than natural causes or SIDS, that was the only option given to them by the defense. No, I don't think you take my point. The jury is told in order to convict, you must do X. You must find da-da-da-da-da-da-da. The law in Nevada at the time was in order to convict a first-degree murder, which is the only choice in front of a conviction, there must be premeditation. If the jury said we can't find premeditation beyond a reasonable doubt, they must acquit. So the question is still, is the failure to instruct on premeditation harmless error? Now, I think in the real world of people and the real world of jurors, if the choice is to bump down to second-degree murder, as distinct from the choice is I either convict or she walks, I think that makes a material difference. And a jury is much more likely to bump down to second-degree murder than it is to say she walks. But the analytic question remains. Your Honor, pursuant to the definition presented and defined by Byford as to deliberation, the question is under Dr. Janice Oppobin's testimony, she testified that it takes approximately two minutes to smother a child to unconsciousness and four to five minutes to suffocate a child to death. That was the evidence that was presented as to deliberation in this case. The jury heard that evidence. That evidence was not contested by the Petitioners in this case. And therefore, the jury did have the deliberation aspect in front of them that this mother may have taken this time and did take this time in order to smother her children because they did not die of the natural causes or sins. And given the theory of the case from the defendant's side, we don't have evidence from the defendant that says, you know, I was just crazy out of my mind. I mean, her evidence is she didn't do it. That's correct, Your Honor. They presented no evidence that the mother did kill these children, but for various reasons, they did not present any of that evidence. Therefore, the evidence that was presented as to the meditation deliberation was not contested. I gather that under Nevada law, there is no requirement for a lesser included offense instruction, right? No, Your Honor. Okay. Unless the Court has specific questions. Thank you, Your Honor. That would conclude my presentation. Now, we took you over, but why don't you take a minute for response? If I may, because you've asked some questions about Nevada law, and I can respond to that, but I'm going to have to give you some imperfect sites on Nevada law because I remember them by the Nevada reporter version. On the issue of lesser included, we have a case called Gramby State, which is 116 Nevada, and I'm sorry, it's decided in the year 2000. If both parties go to a trial like this one on an all or nothing position, and if there is no evidence of second degree murder, then the judge does not have to give a second degree murder instruction. However, because of the mandatory language of the statute, NRS 200.030 sub 3, the judge must in the verdict ask the jury to tell them which degree of murder it is, first or second. That by itself would suggest Judge Fletcher's observation about how a jury would operate in the real world. Additionally, there's a 19th century case called Ex parte Lindley. I don't remember the name of the case, exactly. I know it's in the 19th century, but it gives emphasis to that portion of the verdict. The jury must be given the opportunity to extend leniency where it feels that it's appropriate. Even over a defendant's objection? Well, in this case, now I want to get to the third case, which is Rosas v. State RLSAS, and that's 122 Nevada. So that one was decided, I believe, in 2006. If there is evidence in the record supporting a lesser included offense in any case, the judge must give it even if the parties are not arguing. After all, who is it that decides guilt? It's the jury, not the lawyers or the trial judge. And finally, to address the observation that Judge Todd made, yes, we are here to determine unreasonable application of federal law. Ultimately, that's the benchmark under AEDPA, but in this case, we have it because the court below and the rest of the court used a sufficiency of the evidence test to adjudicate harmless error, and that is an unreasonable application of the law. That has not been the test since 1946. If you have any other questions, I'm happy to answer them.  Thank you. I don't have any questions, but would you give us a 28-J letter with the exact sites of these cases that you gave? I certainly will. Thank you. Thank you very much. Thank you. Thank both sides for your arguments. Buchanan v. Foster is now submitted for decision.
judges: Todd, Fletcher W. , Smith M.